## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

KATY PACZKOWSKI,
on behalf of herself and all
others similarly situated,
               **Plaintiff,**

    **v.**                                      **CASE NO. 18-cv-759**

MY CHOICE FAMILY CARE, INC.
               **Defendant.**

## BRIEF IN SUPPORT OF JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT, DISMISSAL, ENTRY OF MANDATORY INJUNCTION, AND AN AWARD OF ATTORNEYS' FEES AND COSTS

## <u>INTRODUCTION</u>

Following pre-filing investigation, formal and informal discovery, and arm's length negotiations, Plaintiff Katy Paczkowski ("Paczkowski"), on behalf of herself and twenty-one (21) others similarly situated, and Defendant My Choice Family Care, Inc. ("MCFC"), have agreed, subject to Court approval, to resolve all of their claims, as alleged in the Amended Complaint (ECF No. 45). This settlement should be approved because it resolves a bona-fide dispute regarding whether Plaintiffs were appropriately categorized as exempt from overtime pay under the Fair Labor Standards Act of 1938, as amended ("FLSA") and was reached as the result of arm's length negotiations conducted by counsel well-versed in wage and hour law. The $135,000.00 total settlement amount provides direct payment to the Plaintiffs without the need for a claims submission process. Based on the fairness of this

resolution to all Parties involved, the Court should approve their Settlement Agreement, including Paczkowski's request for a service award and Plaintiffs' Counsel's request for attorneys' fees and costs, and enter the Proposed Order of Settlement submitted to the Court and attached as Exhibit B to the Settlement Agreement (ECF No. 55-3).

## I.    Procedural history.

On September 13, 2018, Plaintiff filed her original Complaint in this Court, on behalf of herself and others similarly situated, and alleged that MCFC had a common policy and practice of improperly misclassifying its Care Managers as exempt from overtime pay in a manner that deprived them of such compensation in violation of the FLSA and Wisconsin wage and hour laws. (ECF No. 1.) While MCFC generally denied the allegations in the Complaint (ECF No. 17), it also responded by filing a Partial Motion to Dismiss (ECF No. 12) which sought to curtail the start of the statutory period for the putative Collective Class's FLSA claims and to dismiss the Wisconsin law allegations on the basis of MCFC's status as a non-profit entity. Plaintiff amended her Complaint to address Defendant's arguments as to the FLSA statutory period (ECF No. 23-1). However, the Parties fully briefed the issue of whether MCFC's non-profit status made it exempt from Wisconsin law's overtime requirements. (ECF Nos. 24-28.)

While MCFC's partial motion to dismiss was pending, Plaintiffs' Counsel served written discovery on MCFC. Counsel for the Parties engaged in substantial negotiations over the scope of a protective order and an ESI protocol applicable to such discovery. (Declaration of Summer H. Murshid ("Murshid Decl."), ECF No. 57,

¶ 2; Declaration of Paul E. Benson ("Benson Decl."), ECF No. 58, ¶ 2.) The Parties further engaged in discussions regarding Plaintiff's prospective motion for conditional certification of the 29 U.S.C. 216(b) collective action class. This ultimately led to the Parties' entering into a stipulation to conditionally certify an FLSA collective action class. (Murshid Decl., ECF No. 57, ¶ 3; Benson Decl., ECF No. 58, ¶ 3.)

The Court granted the Parties' stipulated motion for conditional collective action class certification as well as MCFC's partial motion to dismiss as it related to Plaintiff's Wisconsin law allegations. (ECF Nos. 32,37.) As a result, Plaintiff's Counsel oversaw the delivery of notice to the putative collective action class members and again amended her complaint to remove the now dismissed Wisconsin law claims. (Murshid Decl., ECF No. 57, ¶ 4; ECF No. 45.) Between April and May 2019, twenty (20) additional Plaintiffs filed Opt-In forms in this matter to assert their FLSA claims for unpaid overtime wages. (*See generally* ECF Nos. 36—46.) Another Opt-In returned a late consent form to Plaintiffs' Counsel which the Parties ultimately agreed would be filed and considered timely. (ECF No. 52.) Accordingly, at the close of the notice period, twenty-two (22) individuals, including Paczkowski, had consented to assert their FLSA claims in this matter.

With the collective action class determined, Counsel for the Parties engaged in preliminary discussions regarding the possibility of early resolution. (Murshid Decl., ECF No. 57, ¶ 5; Benson Decl., ECF No. 58, ¶ 4.) Through an analysis of voluminous time and payroll records produced by MCFC by Plaintiffs' expert

witness, as well as comprehensive surveying of the Collective Class Members, Plaintiffs' Counsel was able to project potential damages for the Collective Class Members in early August. (Murshid Decl., ECF No. 57, ¶ 6.) Over the next six weeks, Counsel for the Parties engaged in ongoing, arms' length settlement discussions which resulted in a settlement in principle being reached on September 13, 2019. (ECF No. 53.) The Parties filed a notice of settlement with the Court on September 16, 2019 (ECF No. 53) and thereafter proceeded to work at arms' length to finalize and memorialize the terms of their Settlement Agreement in advance of bringing this pending motion. (Murshid Decl., ECF No. 57, ¶ 7; Benson Decl., ECF No. 58, ¶ 5.)

## A. The Settlement Agreement.

The terms of the settlement, stated briefly, are as follows:

- There is a $135,000.00 Settlement Fund to be divided as follows:

    o $83,269.83 – FLSA Fund;

    o $46,730.17 – Attorneys' fees and costs; and

    o $5,000.00 – Paczkowski service payment.

- Each of the twenty-two (22) Plaintiffs who joined this matter by filing an Opt-In form will receive a check with his or her *pro rata* portion of the FLSA Fund in an amount set forth for such individual in Exhibit A to the Settlement Agreement.

- Defendant will make the settlement payment within thirty (30) days of the Court's approval of the Settlement Agreement as provided for in the

Parties' Proposed Order of Settlement, attached as Exhibit B to the Settlement Agreement.

– Any settlement amounts allocated to individuals that are not cashed by any individual, for any reason, will be paid by a *cy pres* to The Employee Rights Advocacy Institute for Law & Policy, 2201 Broadway, Suite 310, Oakland, CA 94612.

– A mandatory injunction shall be entered to enforce the terms of the Settlement Agreement and provide the Court with a basis to retain jurisdiction over this matter for such purposes.

This settlement is fair and was reached at arm's length and in recognition of the litigation costs and risks faced by all Parties. (Murshid Decl., ECF No. 57, ¶ 8; Benson Decl., ECF No. 58, ¶ 6.) The settlement is structured to maximize payment to participating Plaintiffs as there is no claims process required for participation. (Murshid Decl., ECF No. 57, ¶ 9; Benson Decl., ECF No. 58, ¶ 7.) Rather, upon approval, the full FLSA Fund amounts will be issued to Plaintiffs without any other steps being required. (Murshid Decl., ECF No. 57, ¶ 10; Benson Decl., ECF No. 58, ¶ 8.) This settlement is between Plaintiffs and MCFC only. Potential class members that did not file Opt-In forms are not subject to, nor bound by, the Settlement Agreement. (ECF No. 56-1.) Because the settlement is fair and was reached by the Parties at arm's length, the Parties jointly request that the Court grant approval of their Settlement Agreement.

## ARGUMENT

**I.    The Court should approve the Settlement Agreement in one-step.**

In the Seventh Circuit, a one-step approval process is the norm for FLSA settlements that do not include Rule 23 classes. *See Furman v. At Home Stores LLC*, No. 1:16-cv-08190, 2017 U.S. Dist. LEXIS 73816, at *3 (N.D. Ill. May 1, 2017) (collecting cases); *see also Konarski v. Ktown Transportation, Inc., et al*, No. 15-cv-781-dej, ECF Nos. 45, 47 (E.D. Wis., April 18, 2016) (granting approval of FLSA settlement and option to release Wisconsin law claims for only those opt-in Plaintiffs). Because the FLSA requires individuals to affirmatively opt-into this action, there are no absent class members and therefore no due process concerns that typically accompany Rule 23 settlements. *Id.*  Here, the claims being resolved are only those of the individuals who have Opted-In and thereby consented to join this action and assert their FLSA claims in this matter. Because there is no Rule 23 class and therefore, no dismissal of the state claims for absent class members, it is appropriate for the settlement to be approved in one-step.

**II.    The Settlement Agreement should be approved because it is a fair and reasonable resolution of bona fide disputes between the Parties.**

For a private settlement of FLSA claims to be enforceable, the settlement must be approved by the Department of Labor or a district court. *See, e.g., Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986); *Adams v. Walgreen Co.*, Case No. 14-cv-1208-jps, 2015 U.S. Dist. LEXIS 86425, at *3 (E.D. Wis. July 2, 2015); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994 (N.D. Ind. 2010) ("[s]tipulated settlements in a FLSA case must be approved by the Court...."). When

reviewing the fairness of a settlement under the FLSA, a court "must consider whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Burkholder*, 750 F. Supp. 2d at 995. An agreement that "is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel ... and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation" is normally approved. *Id.* (internal quotation and citation omitted). A court reviewing a FLSA settlement "may enter judgments on a basis that does not require full payment of liquidated damages after scrutinizing the proposed settlements for fairness." *Id.* (internal quotation and citation omitted).

The Settlement Agreement in this case easily meets the standard for approval. The Settlement Agreement was the result of arm's length negotiations between the Parties, through experienced counsel, over the course of several weeks. (Murshid Decl., ECF No. 57, ¶ 8; Benson Decl., ECF No. 58, ¶ 6.) Recognizing that there were numerous, uncertain legal and factual issues that would need to be resolved through extensive discovery and motion practice, the Parties elected to engage in substantive settlement negotiations early on in the case, in an effort to see if this matter could be resolved prior to substantial and costly litigation. (Murshid Decl., ECF No. 57, ¶ 11.) Those factual and legal issues include, but are not necessarily limited to, the following:

7

- Whether Paczkowski and the Collective Class Members would be able to maintain a collective action through trial;

- Whether Paczkowski and the Collective Class Members were misclassified as exempt from overtime pay in violation of the FLSA;

- Whether Paczkowski and the Collective Class Members qualified for either the "professional" or "administrative" exemptions under the FLSA;

- Whether MCFC's records of Paczkowski and the Collective Class Members' hours worked accurately reflected all hours actually worked in a given workweek; and

- The manner and method of computing damages for Paczkowski and the Collective Class Members' unpaid overtime wages.

(Murshid Decl., ECF No. 57, ¶ 12.) The settlement amount the Parties' ultimately agreed to provides significant compensation to the Plaintiffs with an average settlement award of $3,784.99 after payment for attorneys' fees and costs and Paczkowski's proposed service payment. (Murshid Decl., ECF No. 57, ¶ 13.) This amount constitutes a substantial recovery in light of the average annual salary of a Care Manager, the type of claim being asserted, Plaintiffs' Counsel's evaluation of the individual payroll and time records, and the cost and risk of continued litigation. (Murshid Decl., ECF No. 57, ¶ 14.)

Furthermore, the settlement allocation has been calculated in the most precise manner possible. (Murshid Decl., ECF No. 57, ¶ 15.) Plaintiffs' Counsel retained an expert witness to assist in evaluating the time and payroll records for the Plaintiffs – in addition to conducting their own survey of the individual Plaintiffs – in order to calculate the damages potentially available to each Plaintiff based on their specific hours worked, their salary, and their dates of employment during the statutory period. (Murshid Decl., ECF No. 57, ¶ 16.) To calculate each Plaintiff's *pro rata* share of the FLSA Fund, each Plaintiff's individual *pro rata* percentage was multiplied by the FLSA Fund and divided into two payments according to the agreed-upon tax structure. (Murshid Decl., ECF No. 57, ¶ 17.) This process results in the fairest allocation of the settlement funds as is possible under the circumstances. (Murshid Decl., ECF No. 57, ¶ 18.)

### III. The service award to Paczkowski should be approved as fair and reasonable.

The Seventh Circuit recognizes that service payments are appropriate in circumstances such as those presented by this case and look to the following relevant factors: actions plaintiff took to protect the class's interests, degree to which the class benefitted from those actions, and the amount of time and effort plaintiff expended in pursuing litigation. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). The proposed award in this case is reasonable in comparison to awards approved by other courts in Wisconsin, which can be as high as $25,000.00 per named plaintiff. *Luebke v. Wisconsin Electric Power Company d/b/a We Energies*, 17-CV-00969-WED, ECF No. 79 (E.D. Wis. Feb. 12, 2019) ($25,000.00 service award

9

in unpaid wage case); *Meetz v. Wisconsin Hospitality Group*, 16-CV-01313-WCG, ECF No. 194 (E.D. Wis. Oct. 31, 2018) ($25,000.00 service award in unpaid wage case). Through Paczkowski's actions, a fair resolution of this matter has been achieved on behalf of Plaintiffs, and Paczkowski protected their interests by bringing this action in her name, ensuring that the putative collective action class members received notice of their potential FLSA claims, and authorizing a settlement that reasonably compensates the Plaintiffs for their claims. (Murshid Decl., ECF No. 57, ¶ 19.)

The Settlement Agreement provides that Paczkowski will receive a service payment in recognition of her efforts as well as the benefit Plaintiffs derived from her individual efforts. The amount of the service payment, $5,000.00, is reasonable and similar to prior service payments approved by district courts in Wisconsin in other wage cases. *See Pintor v. Fall River Grp., Inc.*, 2018 U.S. Dist. LEXIS 169477, *2 (E.D. Wis. Oct. 1, 2018) (approving a $5,000.00 service payment for a $130,000.00 settlement) *and Bonnett v. Universal Metrics, Inc.*, 2018 U.S. Dist. LEXIS 167760, *2 (E.D. Wis. Sept. 28, 2018) (approving a $7,500.00 service payment for a $175,000.00 settlement). Accordingly, the Parties submit that a service payment to Paczkowski in the requested amount is fair and reasonable under the circumstances.

**IV. The Court should award the requested attorneys' fees and costs because they are fair, reasonable, and in line with the market rate for similar litigation.**

**A. Plaintiffs' Counsel's request for attorneys' fees and costs is consistent with the reasonable market rate given the risks of this litigation.**

Courts have broad discretion to decide whether a requested fee is reasonable in a class action. 7B Alan Wright et al., *Federal Practice and Procedure: Federal Rules of Civil Procedure*, § 1803.1 (3d ed. & 2008 Supp.). The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 749 (1980). "When a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows Plaintiff's attorneys to petition the court to recover its fees out of the fund." *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994). The court then determines the amount of attorneys' fees that plaintiff's counsel may recover from this fund. *Id.* The common fund doctrine is based on the notion that "all those who have benefitted from the litigation should share its costs.'" *Id.* (citation omitted).

Plaintiffs' Counsel's request for 33.33% of the settlement fund plus costs ($46,730.17) is in line with the market-rate and the Seventh Circuit's market-based approach in awarding attorneys' fees from a common fund.

**B.    A market-based approach is used to calculate attorneys' fees in common fund cases in the Seventh Circuit.**

The Seventh Circuit uses a "market-based approach" to set the percentage of the total settlement from the common fund to be awarded as reasonable attorneys' fees. Under this market-based approach, district courts "must do their best to award Counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg.*

11

*Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*"). "The district court must try to assign fees that mimic a hypothetical *ex ante* bargain between the class and its attorneys." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) (*citing Synthroid I*, 264 F.3d at 718-19)). As the Seventh Circuit outlined in *Synthroid I*, which remains the standard in this Circuit for evaluating the propriety of common fund attorneys' fees requests, courts determining an appropriate percentage of the fund to award in attorneys' fees must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Synthroid I*, 264 F.3d at 718.

In applying this framework, "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992). The object of the district court's analysis "is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible." *Id.* at 572. Ultimately, "Class Counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *Id.* (noting that "in personal injury suits the usual range for contingent fees is between 33 and 50 percent. . . .").

In expressing its preference for assessing attorneys' fees as a percentage of the common fund, the Seventh Circuit explained that the client and/or the court

need "not monitor how many hours the lawyers prudently devoted to the case [because the] client cares about the outcome alone." *Synthroid II*, 325 F.3d at 979. "[C]onsideration of a lodestar check is not an issue of required methodology" when determining an attorneys' fee award. *Williams*, 658 F.3d at 636 (rejecting the objectors' argument that the lodestar calculation should be used when assessing fees because "a pure percentage fee approach best replicated the market for ERISA class action attorneys."). "The question is not how risky the case looks when it is at an end but how the market would have assessed the risks at the outset." *Goodell v. Charter Communs.*, LLC, No. 08-cv-512-bbc, 2010 U.S. Dist. LEXIS 85010, at *4 (W.D. Wis. Aug. 17, 2010) (rejecting the defendant's argument that minimal work by class counsel on the matter, which settled early into litigation, should result in a reduction in the fee award). "The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive." *Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *10 (S.D. Ill. Nov. 22, 2010). Again, the "client cares about the outcome alone" and class counsel's efficiency should not be used "to reduce class counsel's percentage of the fund that their work produced." *Synthroid II*, 325 F.3d at 980. The reasonableness of a fee award must be assessed in the context of "what it buys," and not focus on how "hard and efficiently [Class Counsel] say they worked." *Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014).

The Seventh Circuit's market-based approach requires the court to examine fee contracts privately negotiated for similar litigation and the fees in similar cases.

*Williams*, 658 F.3d at 635. In determining the market value of attorneys' fees, a district court must look to "actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Williams*, 658 F.3d at 635 (7th Cir. 2011) (citing *Taubenfeld*, 415 F.3d at 599). The market can be proven through "testimony or statistics concerning the fee arrangements in … litigation comparable to the present suit." *Cont'l Ill. Sec. Litig.*, 962 F.2d at 572.

Analysis of the Seventh Circuit's market-based factors here confirms the reasonableness of an award of attorneys' fees of 33.33% of the settlement fund. The 33.33% rate requested is consistent with rates of other lawyers in the community and with fee awards in similar class action cases. Moreover, the requested fee is appropriate given the risks associated with this case and the result achieved for the Class Members. Plaintiffs' Counsel's request for an award of attorneys' fees of 33.33% of the common fund, in light of the 33.33% market rate, is reasonable.

## 1. The requested fee award of 33.33% is consistent with the market rate.

The Seventh Circuit has stated that when "the prevailing method of compensating lawyers for similar services is the contingent-fee, then the contingent fee is the 'market' rate." *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986); *see also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("it is commonplace to award the lawyers for the class a percentage of the fund in recognition of the fact that most suits for damages in this country are handled in the plaintiff's side on a contingent fee basis"); *McKinie v. JP Morgan Chase Bank, N.A.*, 678 F.Supp.2d 806, 814-15

(E.D. Wis. 2009) (noting that where a case would likely be handled on a class action contingency fee basis in the private market, awarding attorneys' fees as a percentage of the common fund is appropriate because it most closely replicates the market for the services required).

In determining an award of attorneys' fees, "[t]he best evidence of the value of the lawyer's services is what the client agreed to pay him." *Assessment Techs. of WI, LLC v. Wire Data, Inc.*, 361 F.3d 434, 438 (7th Cir. 2004). That is, where a plaintiff agrees at arms' length to a 33.33% contingency fee, as Plaintiff did here, that agreement "defines the market." *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 908 (S.D. Ill. 2012). In this matter, Plaintiffs' Counsel seeks an award of attorneys' fees and costs that is consistent with what a willing client would agree to pay an attorney to take this type of case at the inception of the representation. Specifically, Plaintiffs' Counsel seeks an award of fees that represents 33.33% of the $135,000.00 common fund settlement, a total of $45,000.00. (Murshid Decl., ECF No. 57, ¶ 20.) This request is exactly what Plaintiff agreed to pay Plaintiffs' Counsel at the outset of representation when the outcome of this matter was still unknown. (Murshid Decl., ECF No. 57, ¶ 21.)

Further establishing that the market rate for this type of litigation is a contingency fee of 33.33%, plus costs, is that this is the same fee that Plaintiffs' Counsel agrees to represent other clients in class action wage and hour litigation throughout Wisconsin. (Murshid Decl., ECF No. 57, ¶ 22.) Similarly, Plaintiffs' Counsel in similar wage and hour lawsuits throughout Wisconsin commonly agree

15

to take on such representation on the basis of similar one-third plus costs agreements. (Declaration of Attorney James A. Walcheske, ECF No. 59, ¶¶8—10; Declaration of Attorney Rebecca L. Salawdeh, ECF No. 60, ¶¶5—7.)

> ## 2.    The requested fee award of 33.33% is consistent with other common fund awards in this district and within the Seventh Circuit.

A contingent rate of 33.33% falls within the normal percentage range of attorneys' fee awards approved by courts. *See* 4 William Rubenstein, Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 14:6, p. 558 (4th ed. 2002) (citing a 1996 Federal Judicial Center Study finding that fee awards in common fund class actions were between 20% and 40% of the gross monetary settlement). "[C]lass and collective action employment lawyers routinely contract to receive one-third of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery." *Furman v. At Home Stores LLC*, No. 1:16-cv-08190, 2017 U.S. Dist. LEXIS 73816, at *10 (N.D. Ill. May 1, 2017) (holding that the market rate in the Northern District of Illinois is also 33.33%)

Both the United States District Courts for the Eastern and Western Districts of Wisconsin have held that a 33.33% contingency rate for attorneys' fees is reasonable in FLSA and Wisconsin wage and hour law hybrid class and collective actions. *See Meetz v. Wisconsin Hospitality Group LLC*, 1:16-cv-01313-WCG, ECF No. 194 (October 31, 2018) (approving a 33.33% contingency fee totaling $666,666 of a $2,000,000 common fund, plus $23,074.67 in costs); *Ehmann v. Pierce Mfg.*, 1:16-CV-00247-WCG, ECF Nos. 143, 151 (May 31, 2017) (approving a 33.33% contingency fee totaling $1,700,000 of a $5,100,000 common fund, plus costs);

*Bonnett v. Universal Metrics, Inc.*, No. 17-cv-1742-NJ, 2018 U.S. Dist. LEXIS 167760, at *2 (E.D. Wis. Sep. 28, 2018) (approving 33.33% contingency fee); *Pintor v. Hypro, Inc.*, 2018 U.S. Dist. LEXIS 168845, at *3 (E.D. Wis. Oct. 1, 2018) (same); *Pintor v. Fall River Grp., Inc*, No. 17-cv-865-pp, 2018 U.S. Dist. LEXIS 169477, at *2 (E.D. Wis. Oct. 1, 2018) (same); *Brandt v. WSB-Grafton, Inc.*, No. 16-cv-1588-pp, 2017 U.S. Dist. LEXIS 171155, at *2 (E.D. Wis. Oct. 17, 2017) (same); *Yu v. Millwood Inc.*, 2:17-cv-00324-NJ, ECF No. 66 (May 18, 2018) (same); *Demeuse v. Community Traffic Control LLC*, 2:16-cv-00651-PP, ECF No. 48 (January 11, 2018) (same); *Rossman v. A.R.M. Corporation d/b/a/ Comfort Keepers, et al.*, 1:16-cv-00493-WCG, ECF No. 94 (December 15, 2017) (same); *Thompson et al., v. Carma Laboratories*, 16-CV-00030-DEJ, ECF No. 31 (E.D. Wis. August 15, 2016) (same); *Johannsen v. Lyall Manufacturing WI, Inc.*, 2:15-cv-00897-DEJ ECF No. 45 (E.D. Wis. September 12, 2016) (same); *Johannsen et al., v. Argon Industries*, 15-CV-1080-JPS, ECF No. 70 (E.D. Wis. July 15, 2016) (same); *Hanson v. Helgesen Industries, Inc.*, 2:15-cv-00878-DEJ, ECF No. 112 (E.D. Wis. September 14, 2016) (same); *Webb et al., v. Midwestern Wheels Inc., et al.,* 15-CV-1538, ECF No. 42 (W.D. Wis. July 5, 2016) (same); *Ordonez v. Pop Manufacturing, Inc., et al.,* 15-CV-823-JPS, ECF Nos. 32, 34 (E.D. Wis. October 30, 2015) (same); *Nordgren, Evan v. Epic Systems Corp.*, 3:13-CV-00840-BBC, ECF No. 88 (W.D. Wis. March 20, 2015) (same); *Beierle et al., v. BR Metal Technology*, 13-CV-01280-CNC, ECF No. 28, 40 (E.D. Wis. June 26, 2014) (same); *Williams v. Cargill*, 2:09-cv-01006-LA, ECF No. 81 (E.D. Wis. Mar. 23, 2014) (same); *Hernandez v. La Fuente Ltd.*, 13-CV-366-RTR,

17

ECF No. 102 (E.D. Wis. Oct. 15, 2014) (same); *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, 11-CV-592-WMC, ECF No. 150 (W.D. Wis. Oct. 23, 2013) (same); *Denk v. Pine Ridge Assisted Living et al.*, 3:11-cv-00210-WMC, ECF No. 81 (W.D. Wis. Aug. 7, 2012) (same).

Based on the forgoing, the market rate in Wisconsin for similar class and collective wage and hour actions is a contingent fee of 33.33% of the common fund, plus costs. Plaintiffs' Counsel's petition for fees here is therefore both reasonable and within the range of rates charged within this market.

### 3. The requested fee award satisfies the *Redman* ratio.

In protecting litigants from the collusive results of "clear sailing" agreements, the Seventh Circuit instructs district courts to examine the ratio between 1) the requested attorneys' fee to; 2) the requested attorneys' fee plus what the Class Members received. *Redman*, 768 F.3d at 630. The Seventh Circuit rejected a ratio that was, at best, 1 to 1.83,[1] or a 55% contingency. *Id.* (rejecting $1,000,000 in fees compared to $1,830,000 total common fund). The Seventh Circuit further questioned whether the full value of the $830,000 would make it to the class members. *Id.* Because some class members would not receive the value of the settlement, resulting in a reversion to RadioShack, the ratio would be further diluted from what the court initially calculated. *Id.*

---

[1] The Seventh Circuit calculated the ratio as $1,000,000 / ($1,000,000 + $830,000), the ratio of attorneys' fees to the sum of those fees plus the value to the class. *Id.*

18

The ratio before the court in this matter is substantially fairer to the Plaintiffs, as it does not exceed 1 to 3 ($45,000.00 / ($88,269.83 + $45,000.00), or 33%. The Seventh Circuit suggests that the "attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014). No part of the settlement funds here will revert to MCFC, unlike the defendants in *Redman*. Further, there is no complex claims process for the settlement here – if approved, the full remainder of the settlement fund after attorneys' fees and costs ($88,269.83) will be paid to the Plaintiffs, or, alternatively, the *cy pres* recipient where undeliverable. Following the Seventh Circuit's guidance, Plaintiffs' Counsel has designed this settlement "in such a way as will maximize the settlement benefits actually received by the class, rather than to connive with the defendant in formulating claims-filing procedures that discourage filing and so reduce the benefit to the class. *Pearson*, 772 F.3d 781 (rejecting as outlandish a fee award of $1.3 million, where the class only actually received $865,284 because of the claims processes in place).

The attorneys' fees petitioned for here are at the low end of the *Redman* ratio – i.e. 33% of the total settlement fund, all of which will be distributed without reversion. For this reason, the fees requested satisfy the concerns raised by the Seventh Circuit in both *Redman* and *Pearson*.

## V.    Plaintiffs' Counsel's request for costs is reasonable.

Plaintiffs' Counsel petitions the Court for an award of $1,730.17 in actual costs, including the cost of its expert witness in analyzing and valuing the Plaintiffs'

claims. An itemization of these costs is attached in support of this motion and shows generally costs incurred as follows:

- $400.00 – filing fee;

- $80.00 – service of process fee;

- $49.97 – photocopying and postage fees for mailing notice;

- $0.20 – PACER fees; and

- $1,200.00 – damages' expert fees.

(Murshid Decl., Ex. 57, ECF No. 57-1.) While Plaintiffs' Counsel typically bills clients directly for these costs when clients are paying for legal services on a non-contingent basis, Plaintiffs' Counsel advances these costs in contingent representation in spite of the risk of non-recovery. (Murshid Decl., ECF No. 57, ¶ 24.)

In summary, Plaintiffs' Counsel was careful to incur costs in a manner that assisted in narrowing factual and legal issues throughout the litigation and ultimately allowed Plaintiffs' Counsel to evaluate the Plaintiffs' claims and reach a fair and reasonable resolution in light of the continued risks of litigation, which in turn benefits the Plaintiffs. (Murshid Decl., ECF No. 57, ¶ 25.) Accordingly, the Court should award costs of $1,730.17 to Plaintiffs' Counsel in this matter.

## CONCLUSION

For the above-stated reasons, the Parties jointly request that the Court enter an order finding that the Parties' Settlement Agreement is a fair and reasonable

resolution of a bona fide dispute and enter their Proposed Order of Settlement to allow the Parties to effectively enforce the terms of the Settlement Agreement.

Respectfully submitted this 1st day of November, 2019.

Respectfully submitted,

*s/ Paul E. Benson*
Paul E. Benson, SBN 1001457
pebenson@michaelbest.com
Mitchell W. Quick, SBN 1001493
mwquick@michaelbest.com
Alexander M. DeGuire, SBN 1097948
amdeguire@michaelbest.com

Respectfully Submitted,

*s/ Summer H. Murshid*
Larry A. Johnson, SBN 1056619
ljohnson@hq-law.com
Summer H. Murshid, SBN 1075404
smurshid@hq-law.com
Timothy P. Maynard, SBN 1080953
tmaynard@hq-law.com

Michael Best & Friedrich LLP
100 E. Wisconsin Avenue
Suite 3300
Milwaukee, WI 53202
(414) 271-6560 (office)
(414) 277-0656 (facsimile)

Attorneys for Defendant

Hawks Quindel, S.C.
222 E. Erie Street, Suite 210
P.O. Box 442
Milwaukee, WI 53202-0442
(414) 271-8650 (office)
(414) 271-8442 (facsimile)

Attorneys for Plaintiffs